959 F.2d 239
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ASSOCIATED AIRCRAFT PARTS, INC., a Nevada Corporation,
Plaintiff-Appellant,
v.
LOCKHEED CORPORATION, d/b/a Lockheed Aeronautical Systems
Company; High-Line Aviation, Ltd; Barclays Bank
Agricultural Finance Corporation, d/b/a
Barclays Bank of Canada,
Defendants-Appellees.
 No. 90-15940.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 14, 1992.
Decided April 9, 1992.
 
 Before SCHROEDER, REINHARDT and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This appeal arises out of a purchase agreement for airplane parts between Associated Aircraft Parts, Inc. and Lockheed Corporation. The district court granted the defendants' motion for summary judgment and we review that decision de novo. Kruso v. Int'l Telephone & Telegraph Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990). We affirm.
 
 
 3
 In June 1987, Lockheed promised to sell and Associated promised to buy the parts for $5,000,000. The money was to paid by September 17, a date which Lockheed extended several times, to December 15, provided that Associated paid $25,000 as a nonrefundable deposit by December 3. It didn't, and that was the end of Lockheed's contractual obligation to Associated.
 
 
 4
 Associated was unable to arrange financing within the time limit provided for in its contract with Lockheed, so it could not make the purchase payments within the time limit in the contract. Associated negotiated with High-Line for a joint venture agreement and with Barclays for financing, but the joint venture never came into existence, and the financing was never agreed upon. High-Line and Lockheed made their own agreement for the same airplane parts after the Associated contract expired, but this separate arrangement involved neither breach of contract nor tortious conduct by either of them or Barclays. Neither Highline nor Lockheed had any obligation to Associated.
 
 
 5
 Associated negotiated a "letter of intent" with High-Line, signed in October, for establishment of a new corporation, to operate as a joint venture to buy $7,900,000 in airplane parts from Lockheed, and $1,100,000 from United, to be "fully financed" by a loan "that has been arranged with Nevada State Bank" to be assumed by the new joint venture corporation. High-Line's obligations under the joint venture agreement were to be "conditional on it arranging suitable financing," to "reduce" the Nevada State Bank loan by about $3,400,000, and the parties were to "enter into formal agreements" for the joint venture "when the structure is finalized and the conditions fulfilled." In fact, the Nevada State Bank loan never existed, High-Line arranged financing through Barclays but the agreement was unacceptable to Associated, and the "structure" was never "finalized," so the parties never entered into the contemplated formal agreement for a joint venture. There was therefore no breach of the agreement to form a joint venture, and no breach of obligations to a joint venturer.
 
 
 6
 High-Line negotiated a loan agreement with Barclays Bank, but the terms were unsatisfactory to Associated, so it rejected the agreement. Thus there was no agreement with and no breach of contract by Barclays.
 
 
 7
 Although High-Line and a person who had been working for Barclays made their own deal a couple of weeks after Lockheed's obligation to Associated expired, they had no obligation not to do so. The evidence showed no fraud, bad faith or unfair dealing with Associated. All Associated's evidence showed, without any genuine issue, was a deal with Lockheed that never worked out, because Associated could not come up with the necessary financing on its own and the parties could not agree upon the terms of the financing which was available through High-Line and Barclays, followed by High-Line and Lockheed salvaging another deal from their otherwise wasted efforts.
 
 
 8
 Associated correctly argues that a joint venture does not require a formal written agreement for its formation, and that the letter of intent was not an integrated contract. The inference Associated draws, though, that a joint venture came into existence without a formal written agreement, is incorrect. The effect of the letter of intent was to describe the general arrangements which would lead to the formation of a joint venture, and, by its explicit statement of conditions and contemplation of a formal agreement, to negate any inference that a joint venture had already been formed. Had there been nothing in writing, there might possibly have been a genuine issue of material fact as to whether a joint venture had come into existence, but in the face of the letter of intent, there was no genuine issue, and the district court correctly determined as a matter of law that no joint venture had come into existence. The letter of intent plainly made the coming into existence of the joint venture contingent upon events which never took place.
 
 
 9
 Associated's exclusive option to purchase the parts from Lockheed expired when Associated failed to pay the $25,000 deposit on December 3 required to get another extension. Associated's claim for breach of contract therefore fails. In the absence of a contract after December 3, the claims of breach of implied covenent of good faith and fair dealing, intentional interference with contractual relations, and the tort claims relating to the contract also fail.
 
 
 10
 Associated also asserts a cause of action for constructive fraud and intentional and negligent misrepresentation against High-Line and Barclays. Associated alleges that both parties represented that Associated would be able to obtain a loan from Barclays, knowing that to be false and intending to deceive Associated. As the district court correctly noted, however, all of the evidence shows that High-Line did in fact cooperate with Associated and Barclays, and that Barclays did in fact offer to loan money. Associated chose not to accept this offer. There was no evidence of intentional or negligent misrepresentation.
 
 
 11
 Associated's claim for interference with economic advantage cannot survive the missed December deadline for Associated to make its payment. The evidence shows that Barclays was not a party to the eventual purchase of the parts, leaving no reasonable theory on which to base a claim for interference on their part. With respect to High-Line, the evidence shows that they did not approach Lockheed until Associated's option had expired. In addition, Associated has failed to offer evidence that it would have benefited through a business relationship with Lockheed in the absence of High-Line's purchase of the parts. Associated didn't have the financing to buy the parts.
 
 
 12
 Barclays argues for a reversal of the district court's denial of Rule 11 sanctions against Associated. Because Barclays has not filed a cross-appeal of the district court's order, the issue is not properly before us, and we decline to reverse in the absence of an appeal. Animal Protection Institute of America v. Hodel, 860 F.2d 920, 928 (9th Cir.1988) (cross-appeal required when appellee seeks to alter judgment to enlarge the relief granted).
 
 
 13
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3